Good morning. May it please the court, Duncan Byers for the appellants. I would like to start out my discussion with the court with a quote from this court in the Allen v. Crankshaft case where the court stated as a general principle that judges should mistrust the subjective notions if our objective indicia to guide their judgments. And nothing could be more on point in this case than that particular statement. This is an issue that comes before the court on a 12b6 motion where my client's copyright infringement case was dismissed when the lower court made a purely subjective decision that the two works at issue were not similar and dismissed on that basis. This court adopted the two-prong substantial similarity test from the Sid and Marty Croft case that was handed down in 1977 in the Ninth Circuit. That case split the substantial similarity case into two prongs, the first prong being the extrinsic prong, the second prong being the intrinsic prong, the difference between them being that the first prong is an objective prong and the second prong being subjective. In 1990, the Ninth Circuit revisited that issue in the Shaw v. Lindheim case and in Shaw v. Lindheim found that all elements are considered under the extrinsic prong leaving only a quote mere subjective judgment as to whether two works are or are not similar. The same year, this court ruled in the Dawson v. Henshaw case that inherent in the Croft decision was that the extrinsic test is solely objective and the intrinsic test is solely subjective. Does it matter when we are looking at these cases what the subject matter is? The Ninth Circuit case dealt with literary work, was it? That's correct, Your Honor. Then you've got the Henshaw case here dealing with, was that the furniture case or was that the universal case? The Henshaw case was not the furniture case, if memory serves correctly, Your Honor. The court is correct. The question is, is in looking at these cases, should we look at the cases dealing with music differently than we do with cheers and literary copyrights or do we look at the substantial similarity law as being applicable in all instances? There are two paths and two different types of works to be considered when applying the substantial similarity test. The Apolles point to a case, and forgive me, I'm going to butcher the name, it's the Pacea case, Pacea v. McDonald's case, which also is from the Ninth Circuit and states specifically that there's a delineation and the question is whether or not the idea and expression merge in the final work or do not merge in the final work. In that case, the Shaw reasoning was not applied and there's a lineage of cases in the Ninth Circuit where it's not applied, where you have works where the ideas and expression merge. In this case, it was masks. However, the Shaw v. Lindheim case, that lineage has been applied to fabric, and that was the L.A. Printex case in 2012 in the Ninth Circuit, to art, to musical works in 1996 in the Smith v. Jackson case in the Ninth Circuit, to screenplays, to furniture by the Federal Circuit, sales training materials, music again in the Central District of California, the adaptation of a novel to a screenplay. Well, you know, that's where I'm getting at. I'm trying to understand where we're going with this in terms of the extrinsic prong and intrinsic prong, but at least preliminarily, I think we have to decide is there a difference with music in the manner in which it could be a part of it, so to speak, the so-called chorus or the hook of it. It has to be your argument that that really is what this is about. That in music, unlike perhaps a literary work where it could be viewed for the whole, perhaps an intrinsic case where the whole work is done, at least there's a focal point here that if you pull out this central chorus, I think of a lot of songs that are out there, probably a lot of us know the chorus, but we don't know the words to anything else there. And is that kind of where you're going with this? I mean, help me out on this. That's correct, Your Honor. The application— You won't get that from anywhere else. I don't know anything else that that applies to. That's what I'm asking. I don't know. It doesn't apply to furniture. It doesn't apply even to literary works. I'm not sure there's a part of the book. There are quotes out of it, but I'm not sure books are remembered generally for that kind of a hook that's in there unless it's the title being repeated in it, I guess. No, that's—yes and no, Your Honor. I agree to the extent that there, in this case and in most music copyright infringement cases, there are essential elements that must be focused on that the accuser is saying were copied. You know, the recent Robin Thicke case turned on specific elements like that. This case turns on particularly the chorus and the hook. But the analysis, the analytical dissection of the works to determine not just what is original and protectable, but is that copied in the other work, taking all the other elements out of it, has been applied. For example, this court applied it in 2000 in the Lions Partnership v. Morris Costume case where the court said the analysis must first determine the extrinsic test before you can even look at the intrinsic test. And that was a— Are they independent to some extent? Are they dependent on one another, the two tests? I mean, it's not like you've got to find out what's in this extrinsic first, what's protected, unprotected, and then you look only at one part of that to see if that meets it. It looks to me, and Judge Wright, in looking at this set in the intrinsic test, basically says you just don't meet this, almost as though, well, we can assume you meet that test, but you don't meet this. Can that be done? Well, that's our argument, that they are separable and they have been separated. But the court assumed, okay, extrinsic was not met here, or was met in your instance, but say, okay, even if I assume that, I'm now going to look at the intrinsic, and that's not met. I don't believe so, and I believe that the line of reasoning underlying the decisions in the Ninth Circuit and in this court and in other courts leads to the conclusion that we're at a point where the plausibility standard that's required in order to defeat a 12b-6 motion to dismiss is met when the extrinsic test is met. And here's why. The appellees have relied upon cases that involve patent infringement and trademark infringement, obviousness and confusion in the marketplace, for the proposition that a court can do this. However, in those cases, there was a mixed question of the extrinsic and intrinsic, the objective and subjective. In this case and in cases where the court is dealing with works like this, there's a clear delineation between them, and the court said so in 1996, in the Dallier v. Levi's case, that the objective extrinsic test was expanded to encompass all objective manifestations of creativity. And this is where the appellee's argument falls short and runs into problems, because they've argued that you listen to the songs, and no reasonable person could say that the songs sound alike, but that's a purely subjective argument. That's under the intrinsic problem, wasn't it? That's under the intrinsic problem, and that's how this was decided. Extrinsic over the intrinsic problem, that's what I'm asking about. Right. Your argument seems to be if you're going to assume the extrinsic problem, then the jury ought to decide the intrinsic problem. That's correct. That sounds like to me what you're saying. That's correct, and it's not as far a step as they would have the court believe. And here's why, is because other than the subjective test being reserved for the ultimate finder of fact, should the extrinsic test be met, in this circuit as it stands right now, the intrinsic, purely subjective can be decided by the trial court. That's the only difference in the state of the law between the Ninth Circuit and the Fourth Circuit. The Fourth Circuit has adopted every single other portion of the analysis, including the complete separation of the extrinsic and intrinsic, the identification of the extrinsic as being all of the objective indicia, and that the intrinsic test is purely aesthetic. It's purely a subjective question. There has to be some substantial similarity questions in some factual situations where any judge could do it as a matter of law. I mean, you could pick a song that's totally different, and there's no similarity whatsoever for a jury to decide. But I take it you maintain here, and this is where I get a little confused in terms of, what are we looking at, the whole song, everything that's there? Because if you listen to the whole song, you say, no, I'm not complaining. But are we listening to that? Is the court to focus on that hook or that chorus? The court's focus should be upon the specifically alleged copied portions of the work. The reason for that is because if you do not do that, it rewards infringers by allowing them to hide the trees within a forest. How do we determine how much of that? I mean, it's not one word that's being used. You can't do that, I mean, probably. Well. I mean, how do we determine what that is? Is that a jury question too? Your Honor, what those elements are can be determined by the trial court, by the judge, on a 12b6 motion. We're not eviscerating the court's ability to act as gatekeeper in these cases. But once the court has determined what those protectable elements are, and if they have been copied, and as a result of that copying, and the importance to the original work, whether or not there's substantial similarity, once the court has determined that, it's our argument that that meets the plausibility standard, and that, we feel, falls directly in line with the reasoning in the Ninth Circuit, that once you've done that, it's a plausible argument. And part of the problem is, is that it is purely subjective. The question of what are the songs, what's the genre, do you listen to it, do you not listen to it. I'll be the first to admit, I get lost trying to figure out whether it's Lady Gaga or Katy Perry on the radio. I can't distinguish between them most of the time. But there are specific genres that I'm familiar with. And because we're talking about a case where the lower court. Can you give me the specific examples, because I don't have a clue who you're talking about. That's part of our argument, Your Honor. One of the things that's important to this is the question of understanding the genre and understanding those elements. There's a quote from the, and I believe it is the, my apologies. I believe it's from the Humphrey v. Lessard case, which was decided right after our opening brief was filed. And the quote is that only a reckless indifference to common sense will lead a court to embrace a doctrine that requires a copyright case to turn on the opinion of someone who is ignorant of the relevant differences and similarities between the works. Instead, the judgment should be informed by people who are familiar with the media at issue. Now. I don't get it. I mean, so as between a judge and a jury, what makes you so confident that a jury will be better informed? I mean, isn't that the only question here, whether a judge can decide this or whether it has to go to a jury? Well, there are two questions with respect, Your Honor. The first one being what does the test look like and what should the court do? We're arguing that the court, number one, first must do the extrinsic analysis and the analytical dissection for that very reason. A court needs to understand the underlying structure and the arguments, for example, from our expert and from our complaint, the elements that are exactly the same. You need the analytic dissection under the extrinsic prong in order to do the intrinsic prong, even though the intrinsic standard is very different. As you look at the whole work, the whole thing, it's just different concept, different feel. But you can't do that without first having gone through the other prong? That's what you're saying? Certainly in circumstances like this where you have a clear separation and one set of objective indicia and the other one is purely subjective, it gives the court an education into the music, the genre, and exactly what it is that the plaintiff is pleading and saying has been copied. Without that, the court is doing what is purely a subjective determination that may or may not depend on. But it's doing a purely subjective determination under a standard that is, we're all agreeing, purely subjective. So I guess I'm not seeing what the point is. That's correct, Your Honor. But what we're saying is, is that because of the inherent problems, and I apologize, I know I've run over. The inherent problems in leaving such subjective and aesthetic determinations in the hands of the court eviscerates access to the courts for a copyright infringement plaintiff. But the copyright plaintiff has met the plausibility standard by showing that, yes, there's substantial similarity under the extrinsic prong. And we leave it for a jury that we've had an opportunity to voir dire to determine whether or not they have any musical taste, whether or not they're tone deaf or the like. If you could voir dire a judge for that, you'd be fine. It doesn't really matter. Right? I mean, is that what you're really saying? The reason it matters that you can go to a jury is because you can try to make sure you have some musical experts on your jury in a way you can't when you're- That's correct, Your Honor. I have one final question. Judge Harris is free. Yes, for now. Have the plaintiffs waived arguments based on the possible existence of direct evidence in this case? We have not, Your Honor. We, at this point, have the access has been for the purposes of this hearing and the appeal, they have conceded access. We're not conceding that there's not evidence of direct copying. We do not have tangible evidence of direct copying at this point. That doesn't mean to say that it's not there. We do have evidence that the works got into the hands of the alleged infringing artists. But other than that, we're not waiving, I don't believe. I'm sorry, can I just- I have two very short questions. So one is you said this is related, what Judge Floyd just asked you is related to something you said before, that once a judge finds that there has been copying and there's extrinsic similarity, it should go to the jury. But I thought that, at least in this circuit, it looks like we've kind of jumbled up. In finding whether or not there has been copying, you're looking for access plus substantial similarity, right? That's correct. That's also the test for whether there has, in fact, been copying. So how are you going to be able to find that there has been copying before you have gone through this whole substantial similarity thing? In a case like this, without direct proof, where you're relying on access. Well, the access has been conceded for the purposes of this. I know that access has, but access isn't enough for copying, right? You need access plus substantial similarity. That's correct. So in looking at substantial similarity at that level, you're fine with the judge doing it? For the extrinsic test, that's correct, Your Honor. So you think that all that is necessary to show copying in this circuit is access plus extrinsic similarity? No, Your Honor. That's what we're arguing is necessary to defeat a 12b-6 motion to dismiss. Ultimately, the burden is still on us to prove access and substantial similarity and convince the jury not just of the extrinsic substantial similarity but also the intrinsic substantial similarity. It's just a question of what the court does at the 12b-6 stage. A very factual question. Were both the composition and the recording copyrighted in this case? It was just the musical. It was the compilation work that was recorded as an album. That's what was just the recording. That's correct. Before you leave, I want to at least clarify one point you made with regard to this so-called hook in the intrinsic prong. We have the universal case here, and the universal case essentially says, as you well know, that you don't do an analytical dissection with regard to the intrinsic prong. You've got to look at the whole and get the feel for it. That's correct. So then how then do we hold a court to say, well, you've got this chorus that's there that you ought to consider? Isn't that analytical dissection? It is to a certain extent, Your Honor. It is a comparison of the works as a whole in the framework of what you have alleged was taken, not the entirety of the work. There are numerous cases that have performed the analysis and have found intrinsic similarity on the basis of particularly important pieces that were alleged to be copied. The fact that the lyrics outside of the hook are different in this case in particular doesn't have any bearing on the ultimate question. The ultimate question is, are the portions that were taken substantially similar? And when you look at the portions that were taken as a whole, they are substantially similar. Thank you. I may beg the court's indulgence for one minute to pull up my speakers. We don't get many cases like this in the Fourth Circuit. The Ninth Circuit gets them all out there. May it please the court. I agree with you wholeheartedly. It's not many a case that the hallow halls of this courtroom are beset by the likes of Justin Beaver and Usher. But for all the falderal that seems to be surrounding this case, this case can be decided on a couple of three simple principles. First, there is no reason and no purpose for changing the law of this circuit. This circuit has for 25 years had a very set test for substantial similarity. And that test requires that you prove that the accusing song in this case have both extrinsic substantial similarity and intrinsic substantial similarity. If you can't prove one or the other, the case goes away. That is the law. That is the law that this court has imposed for 25 years. And just to answer the question, Your Honor, that you asked. Let me ask that. I don't think you might be going there. I am. I don't think music makes a difference in this case. The way you make music has changed in the last 25 years, but the test still applies. Let me explain why. This court has, over the last five years, had three occasions to try to change this test. In each of those occasions, this court has said no. The test is our test. We were not dealing with music. But the same principles. Tell me, how has it changed? I'm just trying to get a feel of how this all works. This is not argumentative. It's just being educated. Yes, sir. I think music has changed in the way that things are more electronic, but I think the ear. You don't have Mozart going back, putting it on paper and putting the little notes up there like you do now. So you say now electronic. Now, believe it or not, I can play a guitar and the computer will write the sheet music for me. There are many different innovations. There's hope for people like me. Absolutely. But the one thing that hasn't changed, Your Honor, is the purpose that we have two prongs under this test. There is a prong. The extrinsic prong is there to dissect the work and to look at it like a musicologist does. Is that considered an objective side? Well, the cases describe what is looked at as objective criteria. They are things like how are the notes put together? What is the entry and exit points for certain phrasing? What is the chord progression, for example? Things like that. Those are specific things you look at, objective musicology things you look at. That's where an expert would help you out. That's where an expert would help you out. And if you looked at universal furniture, if you looked at Dawson, which was a music case many years ago, the same test applies. The most important part of the test, though, is what you said later in your questioning. You have to have a catch. You have to have the elegant part of our test that the Ninth Circuit doesn't have, and that's this. If it takes a PhD to hear that two songs are substantially similar in their total concept and feel, we've defeated copyright law. Because if you don't have a way, a flexible tool for the judge to say, I have two pieces of music. Those two pieces of music sound nothing alike to me. But a musicologist tells me that they have some similarities. We've got to have a way to say, no, we're not going to have a case on this. Let me give you a great example. That's the intrinsic problem. I'll give you a great example. I'm certain that the panel is familiar with the song Heart and Soul. It's the first song anybody ever learns when they learn to play the piano. It was featured in the movie Big. You've all heard it. I'm sure you've also heard the song Blue Moon. Everybody's heard that. They're both jazz standards from the 1930s. Now, if I adopt Mr. Copeland's position in this case, I can go out and hire a musicologist, and that musicologist will tell me something. She will tell me that both of those songs have a 4-4 time signature. She will tell me that both of those songs have a moderate jazz tempo. She'll say they're played often in the same keys, and she'll say just what he's saying in this case. Throughout both of those songs, there is a prominent chord progression. It's known as the 1-6-2-5 jazz turnaround chord progression. My dad's a pianist. He tells me it's something that's used all the time. I don't know, but my musicologist could tell you that. So do we look at it when we're in a courtroom or we're in a vacuum and we get to listen to the whole song? Is that the way we do it, or we think about the general public? I mean, there's just a ton of songs I know a lot about, but all I really know is the chorus, and that's really, in my mind, what the mood and tone of it is all that. All the other stuff I don't really know, but if you put me in a room and said, well, listen to both these, I'm going to listen to all that other stuff. It's almost like now you want to make me an expert. So my question is in trying to apply the intrinsic prompt, even though it appears that it could be analytical dissection, if it becomes apparent that there is a part of it that really is a hook, so to speak, do we then, I don't know if we give it more credit or consider that fact that that's there and there is that similarity with that. To answer your question, first off, we don't dissect. We listen to the whole work, and you can look at the universal furniture case where there was an argument made clearly that we want you to parse, as Mr. Copeland says, the furniture into its protectable pieces. Only compare those. Only compare the little parts that we say are protectable. This court said absolutely not, and the reason they said absolutely not is we've got the extrinsic test for that. What we don't have is the test for the intended audience. The intended audience listening to the work as a whole, not going into it looking for what they're looking at, just listening to it, should come to the conclusion that the two are substantially similar if the intrinsic test is met. Now, does that mean that you have to ignore the fact that the two hooks are similar? No, because if I, as the general public, listen to a song and I hear two hooks that are exactly the same, I may believe that the total look and feel of those two songs is the same. But to answer your question, again, it is the whole song. It is not bits and pieces. And this court repeated that same thing in the Charles Builder cases, the line of cases. And I'm agreeing with that aspect of it. One I think we have to decide, though, is when you look at those bits and pieces, what if you have a big bit in there, and that big bit is just glowing all over the place, and it's the same glowing that glows in both songs like that, and when you listen to them, even though you can clearly see these are different songs, those bits are glowing in both of them. You say, well, it may be, but I tell you what, if I walk away here remembering something, that's what I'm going to remember on both songs. Is that something that the court can do? I think the court, in the stead of the general audience, because Dawson has told us that for popular music that is the intended audience, I think you can put yourself in the place of the reasonable juror, as this court did, and you can decide is this a situation where no reasonable juror would reach that conclusion or is it one in which reasonable jurors would dispute the issue. I think that's the elegance of the intrinsic side of the test. We don't want to parse things. We don't want to say, I want you to particularly listen to the hook. We want you to listen to the whole song, okay? I think personally in this case there is clear evidence when you listen to these songs that even if you were to parse them on the extrinsic side, there are many arguments, and we made them below. The court considered them. She never reached a decision. What happens if we listen and say, well, we kind of feel the other way? I mean, do we give deference to the trial judge on it or do we look at it and say, well, a juror can go another way? I mean, that's the danger of any time you bring these things out. You have a perspective here. Do you want me to answer as an advocate or do you want me to answer as my law teachers told me, which is you review this case de novo, Your Honor, and you review this case from the perspective of the test, and the test says exactly what I've told you. So if you were to disagree, then I can't tell you to decide one way or the other. The answer is if we just simply just disagree. We hear it, and you're now going to put us in a chip. Typically, we like the trial court to do these factual things and get down into it. Why don't we just hear it and just, oh, well, to me, I feel differently. Let me answer. I have to come out and say I feel exactly the way the trial judge did. I would answer. Somebody is listening and feels differently because otherwise the plaintiff wouldn't bring the action. So the danger is that at least in terms of what you hear and think you hear, you potentially as appellate judges could hear something different. If you play something for us, then are you saying if you don't hear it the same way, there's a jury question. But if you do, as you maintain it is, say this is the way, then it's not. Is that where we are on these cases?  which is that if you believe listening to the music de novo that a reasonable juror would not come to that conclusion, then you have to deal with this on a de novo basis. I think it's like any other case, and I disagree with counsel. In a trademark case, this court, if you look at the care first versus first care case, for example, deals with issues much harder than this. The pizzeria uno standard for likelihood of confusion is five to seven factors, depending on which case you're looking at. And this court has routinely upheld court's finding. No reasonable jury could find that something is, there's a likelihood of confusion here because these things don't add up. Can I ask you a question about this intrinsic prong? And this also is for purposes of education. So here is the sort of scenario, the way you explained it, sort of what each prong is for, that was very helpful. But the scenario that I keep stumbling over is, so what if you have, you know, this is an R&B song, and someone takes basically the same song, but they put it in a different genre. Now it's a pop song. So that when you really ask, you know, well, is the concept and the feel, they're different now. They are different. It used to be an R&B song. Now it's a pop song. So sure, they're different. But other than that, you know, your expert will tell you, other than that, it's basically the same song. They've put it in a different, or they've made a rap version of it, something that's really different. So your average lay listener is not going to hear them as the same song, but it's actually a copy. How does the intrinsic prong, then it seems like making the intrinsic prong a required element of the plaintiff's showing is problematic because you could copy, put it in a different genre, and it has a different concept and feel. Well, I understand your question. I think the same test would apply. I think that in the instance where, for example, I sampled a song and I put it into my song, let's say my song was. You're not sampling. Say you took this song and you made it, the whole song is now a rap song. Okay. But other than that, it's the same. All right. And I think the test allows the lay listener to hear that song and say, that song is the same song. It may be a reggae version of an R&B, but it's. It's still the same concept. It's still the concept of an R&B. It's not just the genre that matters. For example, in this case, if you look at the two songs in question and you listen to the way they're played, they both talk about having somebody to love. There's no question. That's their title. That title is in over 300 and some works. The way they go about expressing that idea, the concept and feel they give is different. It's not just the genre is different. One is an R&B, Mr. Copeland's. One is a dance, you know, Mr. Bieber's, Mr. Usher's, the combination. But it's the overall use. If you listen to those songs, one talks about in a melancholic way with a syncopated beat, you know, one result, leaving a painful relationship. The other talks about the exuberance of a new relationship, and the upbeat dance music supports that. It's more than just the overall, you know, is it this genre or that genre. It's the total feel. It's the total takeaway that these jurors would have. And if you had a situation where somebody merely took a song, let's say they took Blue Moon and they changed it into a reggae Blue Moon, you could still say that is the same concept and feel. It's the same song. It's expressing the same idea. It's got a different rhythm. That's one element. But the drop beat of a reggae is, you know, but one part of the total concept. And we have to be careful not to do what you can do with hindsight, and that is to say, well, if I were to look at something like that, would I see all these differences? Because the beauty of that second prong is that it leaves those details to the extrinsic prong. And you have to have both. That's our test. If you get rid of the intrinsic prong, which is what the Ninth Circuit has done, then what happens? Then every time you have a music case, you're going to have a jury trial. Because I guarantee you, I can find similarities in just about all music. They're built on mathematics. Chords are the same, depending on the key you're in. There's only so many ways that you can build a symphony or you can build a reggae song. You're going to use a lot of the same things. And because of that, you end up having open season. And that's why the Ninth Circuit test is so confused, because they're trying to do too much under the extrinsic prong to the exclusion of the intrinsic prong. But you would think the Ninth Circuit, that's where these cases were probably going to go. They'd be more concerned about that than we would be when we get one every now and then. I'm just having difficulty to some extent. I know we've got the Universal case, we've got the Dawson case. But Universal is about furniture. And I just can't compare furniture with music. I mean, I can understand why you would say you can't look at a part of this furniture, so to speak. It's a different thing where you can't look at it. And I'm not going to try to revisit analytical dissection prohibition here. But at least in terms of music, if you hear songs and you hear this chorus and this hook, and you listen to both of them, and really that's what you go away with, is a feel of pain. This is basically the same song. Somebody's packaging things around it, but it's the same song. Isn't that different than with furniture? You know, even in Dawson, which was arrangement music and sheet music, I mean, has anybody confronted this issue at all? That music is really different. May I respond, Mike? In the application of this test? My time is up. I apologize. We've got a little time. All right. I'm happy to respond. Your Honor, I think that many cases have dealt with music. Most cases have applied whatever their circuit's test is to music. Just as this court found that, for example, architecture, which is also subjective in some senses in the Charles Business Builder cases and recently in the building concepts versus Lenar case, the court specifically said, look, we apply this over a broad spectrum of things. Dawson was music. Dawson, though, was sheet music and a little bit different. But in the decision itself, if you look at it, that court said, to answer one of the questions earlier, the trial court found I find there are extrinsic similarities, but I find that intrinsically these are different. And the court said, the Fourth Circuit said, we don't have a problem with the underlying analysis. We have a problem with who your intended listener was. So this court has already said we'll apply this test to music. I agree things may have changed a little bit since then, but I think the same basic test applies. I think you also have a problem in the sense that if you try to make, as what I call the animal farm comparison, if you try to make extrinsic more than intrinsic, you run into problems because you can't have a test. If you have a test that seeks, as one of its purposes, to find out what the intended listener's response is to the art, whatever it is, you cannot say, as the Ninth Circuit has said, oh, we never reached that as a matter of law. That's always for the jury, and anyway, we've subsumed everything that relates to that in the first prong anyway, so it's just an afterthought. You basically are saying at that point that the intended listener test is dead, and that's a mistake. I think for 25 years this court has applied that test over a broad variety of things, including music, and has done so successfully. One quick question. So you talked about the purpose of it, because the other purpose, right, at least in this circuit of substantial similarity, is to figure out whether there has in fact been copying, right? So you're using it for two different things. Has there been copying? And then, assuming there was copying, was the copying of the sort that constitutes an infringement? Was it a misappropriation? Correct. And you're using it for both things. Do we look at it the same way to do both things? Well, let me answer the question. I think I understand where you're going. Let me answer the question you asked to my counsel, co-counsel or opposing counsel. We have this portion of the test to be sure we're serving the purposes of copyright law. That was drawn from Arnstein v. Porter. What's the economic value here? Where are we going? What you're talking about is I can't prove direct copying. If I have direct copying, case over, okay? I mean, copyright law is almost a strict liability. Access plus substantial. Right. How do I get there? Well, what I do is I have to have both of these because I have to make a judgment at that point that there was enough evidence for access and there's close enough copying here so that I can make an inference as a jury that they had it available, what they copied was meaningful, and they copied enough of it to cause a problem. And thereby, I get past the problem of not having direct copy or evidence of direct copying. I guess what I'm driving at is it seems to me that if what you're looking for is evidence of copying, putting to one side for a minute whether there's enough to show misappropriation, you know, it's of the sort that counts under infringement law, but just was there copying or not as a factional matter, like you'd be more interested in this extrinsic stuff because you wouldn't want a situation where someone could copy some things and then change the mood and feel enough to kind of disguise it. But wait a minute. Do you know what I'm saying? But wait a minute. What does our Constitution say? Our Constitution says that we're to promote the useful arts through patent law and through copyright law. I want artists out there coming up with new songs. I want them to do things that are different. All copying is not prevented under the Copyright Act. Only the copying of an expression. First, was there, in fact, any copying there? Aren't you just looking to see are they similar enough that it's probably not just a coincidence? You know, would it even have to be a protected element? Like he just got this tape, his manager called the guy, and now there's a song with the same title. Is that enough to get you? I'm not talking about the stuff you're talking about. This is really just for me to understand the case. Does that at least get you to copying in fact? And now we talk about whether it's of the sort that is a problem under the Copyright Act. I don't think it gets you there because in order to get there, you have to have both prongs of substantial similarity, which subsume both of those elements. And if in the end, just to finish, I'm sorry, but in the end, if what I produce is so different that the lay listener says, sounds different to me, that's not anything close, whatever, what am I doing going to trial over the machinations that may lie beneath that that the lay listener will not hear? It's one part of the calculus, and it's there to protect us, as I said. The elegance of the test is it's a catch. Now, I didn't get to play the songs, but I will tell you that I brought them with speakers loud enough to hear, and I apologize. Thank you. Before we proceed, we can take a little extra time. Go ahead and play your song. Okay. But do so in the context of telling us what segment you are referencing. I will. Is that something you were going to do with your test? Your Honor, I think it's a great idea for everyone to hear the song, and to know the overview, you get to make your own judgment. So will you use your time to listen to the song? If I may have a few words after that. To explain the songs, if you would do that. At least while we're playing them. Your Honor, to explain the song? To explain why we're playing these songs, what we're doing. We're doing the intrinsic test, and you're going to determine what we're doing. Yes, I want to hear that after we hear the songs, is what I'm saying. That's what I want to hear in relation to these songs. And, Your Honor, without speaking or arguing, what I'm going to do is I'm going to play, first, Mr. Copeland's beginning of his song through the end of the first chorus. Okay, I'm not going to repeat it over and over again. And then I will then, without comment, or without his comment, play the Justin Bieber version, which is what's alleged, through the same part. Mr. Myers, we will allow you to speak to those, too. I'm sorry, Your Honor, I know it's highly unusual, but they're selectively choosing which songs they're going to play. There are actually four songs at issue. My client's version, the first demo version, which was recorded by Usher Raymond, then the Bieber version, which was released to the public, and the second Bieber version, which was a remix. In the interest of fairness, we'd ask that the Court hear at least the first three versions. Do you have the first three versions? Well, I have everything that was submitted, Your Honor. This is all in the record? Yes, sir. There are in the record three discs. I'm going to backtrack myself in light of the objection by the appellates, and we'll just not hear it. We've got this in the record, and we've got the ability. In fact, we've heard all these anyway, so it's just a question of deciding what segment. And my comment was only to apologize for all the effort in setting this up and not doing it. Thank you. We don't want to be unfair, Mr. Myers. Yes, sir. Good morning. May it please the Court, my name is Jonathan Davis, and I act on behalf of Usher Raymond IV. I want to address one aspect of this that I think puts it in perspective. We all recognize that litigation abounds. One of the major targets in litigation are celebrities. So a test like what we have here in the Fourth Circuit, which Mr. Nuna repeated, has been active for 25 years, uninterrupted, and applied uniformly and consistently, is a check and a preventive for celebrities being struck with lawsuits that have no merit. Now, when you have the counterfactual here, as Harris alluded to this, but the facts here in which you've got individuals who, in fact, do take a tape to the defendants, they respond to it. It has the same name as the song, the whole name. I mean, in terms of just not everybody can do that. Not everybody is going to have that set of facts where you have the access to it, it's played for them, and then a plaintiff says, they are riding down the road, and says, there's my song. I mean, not every case is like that. And I point out again, we don't get that many cases up here in the Fourth Circuit, so it's the Ninth Circuit that gets them, I would think, for the most part, I guess Second Circuit and others, too, will get them around, but we don't get that many. And there doesn't seem to be that great interest or a thought that having changed things, you've got this flood of a problem. No, but it doesn't mean that the protection that it affords, and let's go backwards, because what we're talking about is 12b-6. I don't think it's the Fourth Circuit's desire to change Federal Rule 12b-6 and say that in the music cases or similar art cases, they shouldn't be entitled to a pre-answer remedy of a motion to dismiss. I don't think that's the intent here. And on the access issue, because we're in a 12b-6 circumstance, we must accept the allegations as pled. We have disputed access, but for purposes of this motion, we deem it to be true because we want to address the Fourth Circuit test on substantial similarity. This is where it gets a little bit crazy with respect to the plaintiff's position. What the plaintiff is trying to do is pick and choose what rules, what tests it wants to apply to save this complaint. And I go back to 12b-6, because since you must assume the allegations as pled, what the plaintiff or appellant has done here is incorporated, not verbatim and in not direct reference, but specific allegations of what it contends to be the objective test, the objective standards that get it past the extrinsic test. So if you have a strategic pleader, one who recognizes that he must have those elements to get through part one of the test, and then he borrows from the Ninth Circuit their rule that says, oh, well, if you've met the first test, you get a jury trial. What we've done is stacked the deck against defendants in the Fourth Circuit, which has never happened before, where they are absolutely certain of going to trial, because the plaintiff has pled his way into satisfaction of the objective test, borrowed a court rule that this circuit has never used that gets them past the second test, and bingo, you have a lawsuit where an unsuspecting celebrity or any music writer is then trapped in a lawsuit. That is different than any other field of law that I know of where Rule 12b applies. That would be an absolutely spectacular result for the plaintiffs, that they know that they will get past the pleading stage to the point where it really counts, because at that point, once you get to an active lawsuit, we're talking about spending on depositions, document production, experts. In this particular area, experts abound. You have financial experts, music experts, every kind of expert you can imagine. So you're giving plaintiffs, or if the Fourth Circuit were to change this rule, a leg up, and I don't think that that's the direction this court wants to go, no matter how many or few music cases it has. So I take it, as we've already acknowledged, music is changing significantly. It just seems to me perhaps there's going to have to be something beyond the courts making these rules here, and as you say, you don't want to have a different rule for music than everybody else out there, but if music is different, what do we do? And it makes it really difficult for us. Your Honor, I want to disabuse you of the idea that it's different, because you were talking about chair cases, script cases, fabric cases, whatever the range of cases are. Judges must only apply their good judgment and common sense, like any other ordinary lay observer would do, a juror. You're the jurors. I mean, you're no different than the people sitting in the box. When Mr. Byers mentioned that, yeah, I want a jury that knows something about music, well, that seems to be counter to the whole idea of his argument. What it's supposed to be is, what's the total concept and feel? We're all capable of doing that, and that was the mistake he made when he was arguing the intended audience. This is not like choral sheet music, and that case was so distinguishable from this situation in the sense that all they had was the written sheet music to look at, and it was, what would a choral director divine from that sheet music? Quite different than a situation in which we all get to listen to the recording. We know it when we hear something similar, and we know when two things are on diametric opposite. So you're saying, really, in response, I just want to make sure I understand your answer to Judge Wynn, is that music may or may not be different, but music, people really care about the chorus and the hook, but all of that can be taken account of under the intrinsic prong, right? If that's what people care about about music, then these two things, you may find them intrinsically similar simply because they have a very similar chorus and hook, even if there's nothing else that's different. My understanding of what you may be asking is that the underlying premise of the intrinsic test is total concept and feel. You are not allowed to parse it, no dissection. You listen to it from beginning to end, and after you've heard that, after you've sensed it, appreciated it, considered it, does it aesthetically sound substantially similar? I think everyone in this room is capable of doing that, particularly in this case. This case should not be the poster case where we make a new rule, because if you listen to this song against the plaintiff's song, they are starkly different. On that point, I want to make sure I understand that, because as I view it, if our determination is whether a reasonable juror could make a decision one way or the other, and I asked about the playing of that music, what happens if one of us feels differently? Is that some indication that you'd have to say, well, you're unreasonable to get there? It would be a situation where reasonable minds would not differ. And do we, when we do this, are we trying to get the feel for, after you listen to the whole thing in a studio or a courtroom or a vacuum, are we trying to find out, would the determination be what a lay person who's listening on a day-to-day basis sort of thing? You are putting... You can see the difference, though. I mean, there are a lot of songs I don't know much about the whole song, and I'm just, because you made it subjective, I'm just using that, but I know the chorus. But you shouldn't be educated about all the individual parts. What you need to only take account of after hearing it, does it in any way make you feel that it came from something else? In this instance, plaintiff's song. We submit, in this case, there will be no doubt, as Judge Allen recognized. There was no doubt. And she considered the extrinsic test. As she mentioned briefly, there were some common elements. But, she said, there are differences in mood, subject matter, whatever else she said on that particular page. So what happened here, Your Honors, is I think that the entire test was considered, although she did make clear that she did make any findings with respect to the extrinsic test. But we cannot overlook the fact that she did recognize it. And after that, she said, there's two components to this test, extrinsic, intrinsic. Thank you, Mr. Davis. We appreciate your time here. Mr. Bowers. Thank you, Your Honor. I appreciate that you brought to our attention that you weren't satisfied with those recordings, at least in terms of ‑‑I thought it was understandable that you had agreed on that. Well, we agreed that ‑‑ Don't go there now, but I'm just saying that was the reason that we let it go forward. Typically, when we allow something like that, we'd like both sides to agree, and that's what we're doing. But we don't want to spend the rest of the afternoon listening to the recordings. I understand, Your Honor. There's a point to that. When the court gets to the point, if it has not already, when it's going to listen to the tracks and listen to the hooks, it falls right into the subjective problem that we're talking about in that the first version, the first copy version, which was recorded by Usher Raymond, was never released to the public. I think I would have let it go and instead got up and my argument would have been, now, Your Honor, didn't you hear that similarity? Because it's like arguing to a jury. It's kind of odd in a sense because it's music, and that's the uneasy part of an appellate, because we don't typically do that as appellate judges, is to listen and try to second guess what the trial judge did. We give deference to what the trial judge did, but this is the de novo review. It's a de novo review, Your Honor. And our point with those tracks is that the subjective problem becomes glaringly apparent when you listen to my client's version and then the Usher version and then the Bieber version because Mr. Usher sounds an awful lot closer to how my client sounds singing the song than Mr. Bieber does. And that's a completely subjective determination that I have made, but I would certainly commend it to the court to think about when the court is reviewing the tracks. But it should come as no surprise to anybody here, although I admit it's the first time I've heard this argument, that the industry giants want to be able to take pieces of other people's songs, incorporate them into larger works, mix them up, change the tempo, hide the copying, and then argue with a straight face to this court that the 12B6 standard should favor defendants. It's the first time I've ever heard anybody argue that. We're here on a motion to dismiss where all facts alleged have to be taken as true by the court and all inferences from those and all doubts resolved in favor of the plaintiff. Of course the industry wants a circuit that they can bring cases like this into and hide behind sound machines, recording experts, producers who can take the songs and mix them up, who can take a very, very unique seven-chord progression, despite their allegations about the commonality of chordal progressions. That's true. But there are some that are used commonly and some that are absolutely uncommon. In this case, there's a seven-chord progression that doesn't appear anywhere in the Billboard charts that were analyzed by our expert. It's a very unique, very odd seven-chord progression buried in the beginning of their hook, but they don't want the court to focus on that. They don't want the court to look at these things. They want the court to get sucked into the problem of listening to the work as a whole so they don't get the same feel from the whole thing. Can I ask you just one question? Yes, Your Honor. I'm totally following your argument up to this point, but then what I'm left with is this sense that what you really need to address that concern is not something that's in front of us. Your problem comes from the intrinsic prong and the way we have defined it to be all about total concept and feel. That's what allows the kind of subterfuge you're talking about. But that's the prong we've got, and I'm failing to understand why it really makes a difference whether it's a judge getting the wool pulled over her eyes or a jury. There's a disconnect for me between the problem you're identifying and then really the narrow issue in this case, which is whether this necessarily has to be heard by a jury or whether a judge can do it. Because by the time you get presumptively to a jury, you've had an opportunity to develop the expert testimony and make a determination as to the importance. You're almost saying that you can count on the jury to get it wrong and sort of import some stuff they heard under intrinsic into their intrinsic analysis. That's not correct, Your Honor. What I am saying is— It might be your answer, which would be fine. Well, the argument that we're making is that they are incorrect. They are taking the language of total concept and feel, and they're trying to convince the court that this means the entirety of the song, which would mean in the context of classical music, you could take a 30-minute piece and a single movement would be buried in that that's only two minutes long. Their argument is, well, it could be exactly the same, but it doesn't matter because the whole total concept and feel of one feels like Bach and this one feels very Wagnerian. I mean, that's their argument. And this has been rejected in numerous courts. The Middle District of Tennessee in 2013 under a Rule 12 case found that remind me, baby remind me, and associated melodies and vocals only in the hooks were sufficient. And I'm sorry, I've run over. Thank you. Thank you both for your argument. The court will be adjourned for the day, and we will come down and greet counsel before we continue. This honorable court stands adjourned until tomorrow at 9.30. God save the United States and this honorable court.
judges: James A. Wynn Jr., Henry F. Floyd, Pamela A. Harris